**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **Michael DeCotis,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Specialized Loan Servicing LLC,**<br><br>**Defendant.** | ) | **Civil Action No.**<br>**22-10547-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a dispute concerning a mortgage on property located at 23 Bowden Street, Marblehead, Massachusetts ("the Property"). Michael DeCotis ("DeCotis" or "plaintiff") brought this action against Specialized Loan Servicing, LLC ("SLS" or "defendant") for alleged violations of state and federal law. Pending before the Court is defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted (Docket No. 9). For the following reasons, the motion will be allowed, in part, and denied, in part.

## I. Background

Plaintiff Michael DeCotis negotiated a loan of $350,000 from GreenPoint Mortgage Funding, Inc. in October, 2002. To secure the loan, he executed a mortgage on the Property.

Sometime after 2002, Greenpoint assigned the mortgage to Bank of America and in 2014 SLS became the servicer of the mortgage.

DeCotis contends that from the start of their relationship SLS quoted an inaccurate unpaid principal amount of the mortgage. Plaintiff attempted to make timely payments throughout 2015 and early 2016 but was unable to do so consistently. He received a notice of default from SLS in March, 2016. Following that notice, the parties engaged in a convoluted, multi-year exchange of dozens of letters, applications and notices. Although the Court will not rehearse the exhaustive timeline of the events set forth in the complaint, such allegations are accepted as true for purpose of the pending motion.

After being informed that he was in default in 2016, DeCotis sent SLS correspondence disputing the amount of the claimed outstanding balance. He alleges he never received a satisfactory response. Instead, in November, 2016, SLS notified DeCotis that his mortgage remained in default and would be put into foreclosure. At that time, SLS also told DeCotis about loss mitigation programs which could help him make payments on his mortgage and keep his residence.

Plaintiff sent the first of several loss mitigation applications to defendant in April, 2017. He followed up with subsequent applications in May, 2017, December, 2018, February,

2019, and November, 2021. SLS rejected all of those applications on the grounds that they were incomplete. Despite submitting a flurry of supplemental documentation, DeCotis was unable to convince SLS to accept any of his applications. By 2019, the steady exchange of letters and submissions caused DeCotis to become confused as to which application SLS was rejecting and what additional documentation was necessary.

DeCotis submitted his final loss mitigation application on November 23, 2021. SLS responded the next day that it was incomplete. He made repeated attempts to supplement his submission but, on February 15, 2022, SLS informed him that the application was incomplete and would not be processed. After an ineffective exchange of further correspondence, plaintiff brought this action in April, 2022.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations,

the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

DeCotis contends that SLS is liable for violating: 1) 12 U.S.C. § 2605(f), 2) M.G.L. c. 93A, 3) 15 U.S.C. § 1692, i.e. the Fair Debt Collection Practices Act ("FDCPA"), 4) M.G.L.

c. 93 § 49 and 5) M.G.L. c. 183C § 15. He also makes a claim for negligence. Defendant has moved to dismiss all of those claims.

**1. Count I: 12 U.S.C. § 2605(f)**

Section 2605(f) of the Real Estate Settlement Procedures Act provides a private right of action for violations of the regulations found at 12 C.F.R. § 1024.41 et seq. Such a claim must be brought within three years "from the date of the occurrence of the violation". See 12 U.S.C. § 2614. The regulations published in the Code of Federal Regulations ("C.F.R") at § 1024.41 and elsewhere throughout § 1024 are promulgated by the Consumer Financial Protection Bureau and are collectively known as Regulation X ("Reg. X").

**a. Violations Related to the December, 2018 and February, 2019 Loss Mitigation Applications**

DeCotis submitted five loss mitigation applications. He concedes that claims with respect to two of those applications, which were submitted in April, 2017 and May, 2017, are barred by the three-year statute of limitations. SLS, meanwhile, admits that the claim concerning the November, 2021 application is not barred by the statute of limitations. The parties dispute whether claims related to the applications that DeCotis submitted in December, 2018 and February, 2019 are time-barred. Because the complaint was filed on April 12, 2022, the operative

date for the statute of limitations analysis here is April 12, 2019.

According to the complaint, DeCotis submitted a loss mitigation application on December 17, 2018. SLS quickly responded that the application was incomplete and requested additional documents. On January 7, 2019, DeCotis provided the requested documentation to SLS which nevertheless responded sixteen days later that the application was still lacking. DeCotis contends that he then believed his application had been rejected. He submitted a new application on February 28, 2019, to which SLS promptly responded accordingly. On April 8, 2019, SLS notified DeCotis that it would not evaluate the February application because it was incomplete.

All of the described communication occurred outside of the statute of limitations period. By April 12, 2019, the December, 2018 and February, 2019 applications had, in essence, been rejected. The correspondence between DeCotis and SLS with respect to those applications did not, however, end there.

DeCotis avers that SLS sent him another letter, on April 25, 2019, requesting that he provide more documents in order to complete an unspecified loss mitigation application. DeCotis sent additional documentation on May 20, 2019, but SLS once again responded that the application was incomplete. Plaintiff continued to submit documents to defendant during the summer.

On July 28, 2019, SLS informed DeCotis that certain documents submitted in December, 2018 had expired and could not be considered. That same day, DeCotis allegedly sent in more responsive documents. SLS nevertheless maintained that his application was incomplete and, in March, 2020, SLS sent a final letter notifying DeCotis that it would no longer process his application.

Neither party properly addresses the applicable statute of limitations relative to the text of § 2614. DeCotis advocates for a grab bag of possible analyses that depend upon his state of mind, the dates on which he submitted documents and miscellaneous other factors. Although SLS correctly rejoins that the limitations period depends upon the date on which the violation in question occurred, it considers only a limited number of potential violations. SLS suggests that once it allegedly "first violated Reg. X" as to an application, the statute of limitations began to run with respect to any claim related to that application. The Court disagrees. If SLS violated Reg. X again, the statute of limitations for that subsequent violation begins to run "from the date of the occurrence" thereof.

Viewing the complaint in the light most favorable to the non-movant, DeCotis has adequately alleged that SLS violated

Reg. X after April 12, 2019. In particular, 12 C.F.R. § 1024.41(b)(1) requires a mortgage servicer to

> exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

A mortgage servicer may fail to meet that requirement if it

> repeatedly requests documents it already possesses or documents that it knows or should know are not required to complete the borrower's application.

Benner v. Wells Fargo Bank, N.A., No. 16-CV-00467, 2018 WL 1548683, at *11 (D. Me. Mar. 29, 2018).

DeCotis alleges that SLS sent numerous letters demanding supplemental documentation after April 12, 2019. He asserts that he consistently obliged by forwarding additional, responsive documents. The Court accepts those allegations as true at this stage of the proceedings and, therefore, concludes that DeCotis has plausibly alleged that at least some of the post-April 12, 2019, correspondence sent by SLS violated § 1024.41(b)(1) by repeatedly requesting documents SLS already had or did not need.

DeCotis does not, however, plausibly allege that any other violations of § 1024.41 related to the December, 2018 or February, 2019 applications occurred within the statute of limitations period. In the relevant portion of his opposition to the motion to dismiss, DeCotis refers to § 1024.41(c)(2)(iv)

several times. That subsection of Reg. X states that an application is facially complete when

> a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section . . . .

To the extent that DeCotis alleges a violation of Reg. X on the grounds that SLS refused to evaluate his facially complete December, 2018, or February, 2019, applications, the complaint establishes that those refusals occurred on January 23, 2019, and April 8, 2019, respectively. DeCotis asserts that a similar violation occurred on July 28, 2019, when he resubmitted the documents necessary for a facially complete application. He does not, however, cite any authority in support of the notion that a re-submission of documents by a borrower can re-calibrate the statute of limitations as to a mortgage servicer's violation of § 1024.41(c)(2)(iv).

**b. Violations Related to the November, 2021 Loss Mitigation Application**

SLS concedes that the claim DeCotis brought with respect to his final loss mitigation application is not barred by the statute of limitations. DeCotis submitted that application on November 23, 2021, and SLS responded the following day that it was incomplete. DeCotis, in turn, sent in the documents requested by SLS on December 15. A similar back-and-forth as to missing documents continued between DeCotis and SLS throughout

the next few weeks. On February 15, 2022, SLS notified DeCotis that it would not process his application because it was still incomplete. In view of those facts and the inference that DeCotis submitted sufficient documentation to complete his application, DeCotis has again plausibly alleged that SLS violated Reg. X.

SLS contends, however, that the letter it sent DeCotis on November 24, 2021, was a proper notification of incompleteness by which it fulfilled its obligations under Reg. X. The Court has considered that correspondence because it was "sufficiently referred to" in the complaint, see Watterson, 987 F.2d at 3, but the letter does not support the conclusion propounded by SLS.

As an initial matter, plaintiff points out deficiencies of the letter, i.e., that it states: 1) "Proof of Income Amount for HARTFORD LIFE [for two consecutive months]" is missing and 2) SLS received three "Insurance Claims" from DeCotis for July, August and September of 2021. He asserts that those so-called "Insurance Claims" are statements which provide the purportedly missing proof of the amount of income he received from Hartford Life. At this stage of the proceedings, the facts are unproven but the disputed accuracy of the November 24th letter forecloses reliance on it in deciding the pending motion.

Even if the November 24th letter was an accurate portrayal of the documents missing from DeCotis's loss mitigation

application, he avers that he "submitted additional documents" on December 15, 2021, in order to satisfy the shortcoming. The letter from SLS informed DeCotis that he had until December 24th to do just that. As a result, according to the complaint, DeCotis satisfied SLS's request for documents and his application should have been considered "facially complete" on December 15, 2021. See § 1024.41(c)(2)(iv).

Thus, DeCotis has plausibly alleged that SLS violated § 1024.41(c)(2)(iv), and potentially other provisions of Reg. X, when it declined to evaluate and respond to his November, 2021 application after he supplemented it on December 15, 2021. Furthermore, correspondence from SLS seeking additional documents on December 28, 2021, and January 14, 2022, may have violated the requirement of § 1024.41(b)(1) that SLS exercise reasonable diligence in obtaining information to complement an "incomplete" application. See Benner, 2018 WL 1548683, at *11.

**2. Count II: M.G.L. c. 93A**

Defendant moves to dismiss plaintiff's claim under Chapter 93A on grounds that it is based on conduct outside the applicable four-year limitations period. SLS asserts that the Chapter 93A demand letter DeCotis served in August, 2018, referred exclusively to conduct that occurred on or before December 28, 2017. Because a plaintiff's subsequent Chapter 93A

claim is ordinarily limited to the scope of his demand letter, SLS concludes that Count II is time-barred. See, e.g., Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 506 (D. Mass. 2012) (holding that a plaintiff cannot bring a claim under Chapter 93A "without a demand letter stating the specific alleged violations").

Plaintiff rejoins that his claim should not be limited to the scope of the 2018 demand letter because he was not required to send a demand letter to SLS. In Moronta, the Massachusetts Supreme Judicial Court held that M.G.L. c. 93A, § 9(3)

> clearly excuses the plaintiff from serving a demand letter if the prospective respondent either lacks a place of business in Massachusetts or does not keep assets in Massachusetts.

Moronta v. Nationstar Mortg., LLC, 476 Mass. 1013, 1015, 64 N.E.3d 1287, 1290 (Mass. 2016). In his opposition to the motion to dismiss, DeCotis encloses annual reports filed with the Secretary of the Commonwealth of Massachusetts which indicate that SLS does not have a business address in the Commonwealth. DeCotis correctly notes that the Court may consider public records at the Rule 12(b)(6) stage. See Watterson, 987 F.2d at 3.

SLS accepts "arguendo" that a demand letter was not required and instead contends that DeCotis nevertheless relied on the contents of the letter as the "sole factual basis" for

his Chapter 93A claim. That is inaccurate. Although plaintiff extensively refers to the 2018 demand letter in support of Count II, he also "re-alleges and incorporates" all of the facts previously averred in the complaint. See Fed. R. Civ. P 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading . . . .").

Many of the factual allegations incorporated into Count II concern events that occurred after April 12, 2018, i.e. within the statute of limitations period for a Chapter 93A claim. The totality of such allegations, in conjunction with the examples of allegedly unfair and/or deceptive SLS conduct in processing DeCotis's loss mitigation applications found at ¶¶ 136(a)-(s) of the complaint, are sufficient to state a Chapter 93A claim against SLS. See, e.g., Canty v. Wells Fargo Bank, N.A., 463 F. Supp. 3d 57, 62-63 (D. Mass. 2020) (holding that allegations of obstructionist behavior in processing plaintiff's loan modification applications stated a viable claim under Chapter 93A); Traut v. Quantum Servicing Corp., No. 15-CV-13401, 2016 WL 8844254, at *6 (D. Mass. Aug. 4, 2016) (finding allegations that defendant repeatedly requested duplicative documents sufficient to state a Chapter 93A claim). As such, it would be unwarranted to dismiss plaintiff's Chapter 93A claim at this stage.

### 3. Count III: The FDCPA

A plaintiff must bring a claim for a violation of the FDCPA "within one year of the date on which the violation occurs." 15 U.S.C. § 1692k(d). Although DeCotis provides a lengthy recitation of conduct that occurred prior to April 12, 2021, in his opposition to the motion to dismiss, the only event within the statute of limitations period to which he directs the Court is when, on September 2, 2021,

> SLS provided sufficient information for Mr. DeCotis to review the alleged debt information.

DeCotis cites no authority suggesting that such conduct is a violation of the FDCPA and the Court is aware of none. In order to bring a claim under the FDCPA, a plaintiff must prove that

> (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA.

Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 356 (D. Mass. 2008). DeCotis also refers to post-April 12, 2021, conduct at ¶¶ 109 through 123 of the complaint but makes no effort to explain how those allegations comprise "act[s] or omission[s] prohibited by the FDCPA." Id.

In any event, plaintiff has not sufficiently alleged that SLS was acting as a "debt collector" under the FDCPA. As this Court has previously held,

> [m]ortgage servicing companies such as [SLS] are not considered debt collectors under the FDCPA unless the servicer obtained the servicing rights when the debt was in default.

Traut, 2016 WL 8844254, at *4 (citing In re JPMorgan Chase Mortgage Modification Litig., 880 F. Supp. 2d 220, 243 (D. Mass. 2012)). There is no allegation that the loan at issue was in default when SLS took over as the mortgage servicer for DeCotis in December, 2014. Thus, the motion to dismiss with respect to plaintiff's FDCPA claim will be allowed.

**4. Count IV: M.G.L. c. 93 § 49**

Section 49 of M.G.L. c. 93 does not provide a private right of action. See O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 33-34 (D. Mass. 2014). A violation of § 49 is cognizable only to the extent it forms a basis for liability with respect to a plaintiff's Chapter 93A claim. Id. The Court will, therefore, allow the motion to dismiss Count IV.

**5. Count V: Negligence**

Plaintiff alleges that defendant breached a legal duty to him and, through its negligence, caused economic and non-economic damages. In order to state a claim for negligence under Massachusetts law, a plaintiff must allege

> (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury.

Primus v. Galgano, 329 F.3d 236, 241 (1st Cir. 2003) (citation omitted).

The First Circuit Court of Appeals ("First Circuit") has held that no duty arises in the context of a relationship between a lender and a borrower. See Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013); see also, Shaw v. BAC Home Loans Servicing, LP, No. 10-CV-11021, 2013 U.S. Dist. LEXIS 28863, at *14 (D. Mass. Mar. 1, 2013) (holding that the relationship between a mortgage servicer and borrower "does not give rise to a fiduciary duty"). DeCotis admits that there is no legal duty to be found at common law but, without any authority in support, declares that the regulations under § 1024.41 et seq. impose a duty of care on SLS. To the contrary, the First Circuit has held that

> statutory or regulatory violations cannot give rise to a negligence claim when there is no independent duty of care between the parties.

Mackenzie, 738 F.3d at 495-96.

Because the existence of an independent duty of care is required in order for DeCotis to state a claim for negligence against SLS, the lack thereof necessitates dismissal of his claim.

**6. Count VI: M.G.L. c. 183C, § 15**

Finally, plaintiff contends that defendant is subject to liability under M.G.L. c. 183C, § 15. That contention is without merit. As SLS points out, M.G.L. c. 183C, § 15(b)(1) prescribes that

> [a] borrower may bring an original action for a violation of this chapter in connection with the loan within 5 years of the closing of a high-cost home mortgage loan . . . .

The complaint establishes that DeCotis received a mortgage loan on or about October 18, 2002. Thus, the five-year statute of limitations expired well before he brought this action in April, 2022. Count VI will therefore be dismissed.

**ORDER**

For the foregoing reasons, the motion to dismiss of SLS (Docket No. 9) is:

1) with respect to the pertinent conduct occurring after April 12, 2019, at issue in Count I (violation of 12 U.S.C. § 2605(f)), **DENIED**;
2) with respect to the pertinent conduct occurring after April 12, 2018, at issue in Count II (violation of M.G.L. c. 93A), **DENIED**; but
3) with respect to the remainder of Count I and Count II, and as to Counts III, IV, V and VI, **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: November 22, 2022